## Case No. 4,559.

### EVANS v. EATON.

[Pet. C. C. 322;[1] 1 Robb, Pat. Cas. 68.]

Circuit Court, D. Pennsylvania. Oct. Term, 1816.[2]

[1] [Reported by Richard Peters, Jr., Esq.]
[2] [Reversed in 3 Wheat. (16 U. S.) 454.]

BY THE COURT. Neither the premises upon which this motion is founded, nor the conclusion can be admitted. It is not true that the grant of an exclusive privilege to an

invention for a limited time, implies a binding and irrevocable contract with the people, that at the expiration of the period the invention·shall become their property. The state has a perfect right to renew the grant at the end of the period or to refuse to do so; and in the latter case, it is a matter of course that the invention may be used by any person who chooses to do so. In like manner may congress renew a patent right or decline to do so. But even if the premises were true, still there is nothing in the constitution of the United States·which forbids congress to pass laws violating the obligation of contracts, although such a power is denied to the states individually.

The defendant produced a number of witnesses who described a machine called Stouffer's machine or hopperboy, which had been in us in many mills from the year 1764. The construction of this machine is an upright shaft, sometimes·round but most commonly square, passing·through a board somewhat in the form of an S, with·strips of wood nailed on the lower side for the purpose of moving, stirring,·mixing and delivering the flour into the hopper-chest; this machine is moved by the bolting gears. The witnesses stated, that the action of this machine cools and dries the flour sufficiently to be packed from the bolting chest. Some of the witnesses were of opinion that this machine does not cool the flour as well as the plaintiff's, even

independent· of the elevators; many witnesses, however, expressed a different opinion.

The plaintiff objected to the defendant giving any evidence to prove that this machine was used in mills, other than those particularly named in the notice. This objection was overruled, for the reasons stated in the case of.Evans v. Kremer. [Case No. 4,565]. (To this opinion an exception was taken.) A question also arose, whether, when a witness is sworn on his voir dire, any evidence can be given to prove him to be incompetent, except such as arises from his own acknowledgments. The court decided that it could not. But if it should ·in any subsequent stage of the examination, appear, by other evidence, that he is not a competent witness, the court will set him aside. The plaintiff's counsel asked one of their own witnesses, called to rebut the evidence given by the defendant, whether John, Peter and Jacob Stouffer, who it had been proved, had the Stouffer hopperboy in their mills, had taken out licenses under the plaintiff. This was objected to, and the objection was decided by the court to be well taken; it not being stated that the question was intended to contradict or discredit any of the defendant's witnesses; nor that it was rendered necessary by any evidence given by the defendant. If the license was purchased by those persons, it neither directly, nor by fair inference, proves

any thing in relation to the matter in controversy. (This opinion was excepted to.) The plaintiff offered to prove that the father of Mr. Rine, one of the defendant's witnesses, had taken a license from the plaintiff, for the purpose, as the counsel stated, to discredit the witness.

BY THE COURT. Although the counsel proposes to offer this evidence to discredit one of the defendant's witnesses, yet as it is obvious that it cannot in the most remote degree have this effect, it is improper to give it. (Motion overruled.)

It was contended by the plaintiff's counsel, First. That an art as well as a machine may constitute a patentable interest; so likewise the application of a new principle to an old machine, to produce a new result, or a combination of old machines to produce a new result in an old art; even a principle may be patented, if it be applied to any useful purpose. 8 Term R. 95; 2 H. Bl. 463; Fessen. Pat. 231; Whittemore. v. Cutter [Case No. 17,601]. Second. The plaintiff having a patent for the whole improvement, composed of sundry machines, has a right

to all and each of the machines, and may maintain an action against any person who makes or uses them separately. The act for the relief of Oliver Evans, authorises a patent to be made to him for the whole and for each machine, and the plaintiff, in his schedule, which is part of the patent, claims an exclusive right to each. Third. It is not necessary that the plaintiff should be the first discoverer, if he was a real bona fide discoverer, without knowing that a similar discovery had previously been made; this is clearly the meaning of the word "true" in the tenth section, with which the word "original" in the sixth section is synonymous. The word first is used in the statute of James, and was no doubt dropped intentionally by congress. Fourth. Though the plaintiff should not be the original discoverer; yet, after the defendant's offer to take a license under him, it does not lie in his mouth to make that defence. Fifth. As the tenth section limits the bringing of a scire facias to three years, under the equity of that section, no person should be permitted, after three years, to set up the de-

fence mentioned in the sixth section. Sixth. Admit Stouffer's machine to be similar in principle to the plaintiff's, still, as he never obtained a patent for it, it was thereby abandoned and might be patented by the plaintiff. Whittemore v. Cutter [supra].

Upon the evidence, it was contended, that the two machines differ in form, in principle, and in effect. On the other side it was argued, that this patent is broader than the discovery, it not being possible for the plaintiff to contend that he has any merit beyond that of an improvement. If the discovery amount to any thing, it is to that, and consequently the patent could only be for an improvement, whereas this is for the whole machine, under the name of an improved hopperboy. But though called an improved hopperboy, it is not so described in the specification, nor is it stated in what the improvement consists, which is necessary to the validity of the patent. Whittemore v. Cutter [supra]. Upon the evidence it was contended, that Stouffer's hopperboy is older and was in use a great many years before the plaintiff's discovery; that it is the same in form, in principle and effect; performs all its functions as well, and in the same manner.

WASHINGTON, Circuit Justice (charging jury). The plaintiff derives his title to the patent in question, under the private act of congress, passed for the relief of Oliver Evans, on the 21st of January, 1808. His action however, is founded on his patent, and I should not notice the above act, if the plaintiff's counsel had not relied upon it, to prove that the plaintiff is entitled to an exclusive property, not only in the entire improvement, but in the several machines, which are employed to produce the specified results. It would certainly seem that congress intended this, and why the patent is not as broad as the law, I cannot conjecture, unless it was apprehended that some difficulty might occur in the construction of the patent, in relation to these machines, had it pursued the words of the law. But be this as it may, it is certain that the patent contains no grant of a right to the several machines, but is confined to the improvement

in the art of manufacturing flour by means of those machines, and therefore the plaintiff can claim no right which is not included in the patent. It has been stated that the schedule is part of the patent, and that this contains a claim of the invention of the peculiar properties and principles of the hopperboy. Without noticing the extraordinary nature of such a claim, it is granted that the schedule is to be considered as a part of the patent, so far as it is descriptive of the machines, but no further; and even if this claim had been stated in the body of the patent, it would have have conferred no right which that instrument does not grant.

I now proceed to state such parts of the law concerning patent rights (2 Laws [Bior. & D.] 348 [1 Stat. 318]) as may be necessary for deciding the questions which have been made in this cause. It authorises the president to grant a patent for the exclusive right to make, construct, use, and vend to be used, any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvement in any art, machine, &c. not known or used before the applica-

tion. As to what constitutes an improvement, it is declared that it must be in the principle of the machine, and that a mere change in the form or proportions of any machine, shall not be deemed a discovery. Previous to obtaining the patent, the applicant is required to swear or affirm that he verily believes that he is the true inventor or discoverer of the art, machine, or improvement, for which he solicits a patent; and he must also deliver a written description of his invention and of the manner of using it, so clear and exact as to distinguish the same from all other things before known, and to enable others, skilled in the art, to construct and use the same.

From this short analysis of the law, the following rules may be deduced:

_First_. That a patent may be for a new and useful art; but it must be practical, it must be applicable and referrible to something which may prove it to be useful. A mere abstract principle is unsusceptible of appropriation by patent. The intention of congress is very obvious, from the language of this law. The applicant for a patent must show

how the principle is to be used and applied to some useful purpose. The granting words of the patent are still more explicit; they are, "to make, construct, use, and vend to be used."

Second. The discovery must be not only useful, but new; it must not have been known or used before in any part of the world. It is contended by the plaintiff's counsel, that the title of the patentee cannot be impeached, unless it is shown that he knew of a prior discovery of the same art, machine, &c. and that true and original are synonymous, in the intention of the legislature. As it is not pretended that true and original mean the same thing in common parlance, I proceed to enquire whether the legislature intended to use them as such. As to this, there can scarcely be two opposed opinions. The first section, referring to the allegations of the applicant for a patent, speaks of the discovery as something not known or used before the application. And in the sixth section it is declared, that the defendant may give in evidence that the thing secured by patent, was not original-

ly discovered by the patentee, but had been in use or had been described in some public work, anterior to the supposed discovery. Now, if original does not mean first, the preceding expressions in the first and sixth sections, most certainly do.

Third. If the discovery be of an improvement only, it must be an improvement in the principle of a machine, art, or manufacture, before known or in use. If only in the form or proportions, it has not the merit of a discovery which can entitle the party to a patent.

Fourth. The grant can only be for the discovery, as recited and described in the patent and specification. If the grantee is not the original discoverer of the art or machine for which the grant is made, the whole is void. If, therefore, the patent be for the whole of a machine, and the discovery was only of an improvement, the patent is void.

Fifth. A machine, or an improvement may be new, and the proper subject of a patent, although the parts of it were before known and in use. The combination, therefore, of old machines to produce a new and useful

result, is a discovery for which a patent may be granted.

The above principles will apply to most of the questions which have been discussed in this cause. It was strongly insisted upon by the defendant's counsel, that the patent in this case is broader than the discovery; the evidence having clearly proved that, in relation to the hopperboy, for the using of which this suit is brought, the plaintiff can pretend to no discovery beyond that of an improvement in a machine known and in use many years before the alleged discovery of the plaintiff. This argument proceeds upon the supposition that the plaintiff has obtained a patent for the hopperboy, which is entirely a mistake. It is for an improvement in the art of manufacturing flour by means of a hopperboy and four other machines described in the specification, and not for other of the machines so combined and used. That the plaintiff is the original discoverer of this improvement is contested by no person; and therefore it cannot with truth be alleged that the patent is broader than the discovery, or that the plaintiff could not support an action on this patent against any person who should use the whole discovery. But, can he recover against a person who has made or used one of the machines, which in part constitutes the discovery? The plaintiff insists that he may, because, having a right to the whole, he is consequently entitled to the parts of which that whole is composed. This may be good logic, but I must be permitted to question the soundness of the conclusion in point of law. For, will it be seriously contended that a person may acquire a right to the exclusive use of a machine, because, when used in combination with others, a new and useful result is produced, which he could not have acquired independent of that combination? If he can, then if A were proved to be the original inventor of the hopperboy, B of the elevator, and so on as to the other machines, and had either obtained patents for their respective discoveries, or chose to abandon them to the public, the plaintiff, although it is obvious he could not have obtained separate patents for those machines, might nevertheless deprive the original inventors in the first instance, and the public in the other, of their acknowledged right to use those discoveries, by obtaining a patent for an improvement which consists in a combination of those machines to produce a new result. An argument which leads to a consequence so glaringly unjust, if not absurd, cannot possibly be a sound one. It would not be more unreasonable to contend, that if the plaintiff were the patentee of the hopperboy, which consists of a shaft, an arm, &c. he might bring an action against any person who, in the manufacturing of flour, should make use of a shaft or any other of the component parts of his hopperboy.

I presume, therefore, that the plaintiff's counsel could not mean to contend for this right, except in a case where the patentee was the original discoverer of the particular machine or part, for which his suit is brought; and if so, we are still brought to the question whether, in point of fact, the plaintiff was the original discoverer of this machine, called the hopperboy. But before I proceed to consider that question, I would ask whether it is quite clear that this action can be maintained, although it were proved beyond all controversy that the plaintiff was the original inventor of this machine? And this inquiry is made, not with a view to decide the question, because it was not discussed at all at the bar, but for the purpose of preventing a conclusion being drawn from the silence of the court, that we considered the action would lie. I will merely suggest some of the difficulties with which, upon a superficial view of the question, we are forcibly struck.

The patent is the foundation of the action, and the gist of the action is the violation of a right which the patent has granted. But is the exclusive right to the hopperboy granted by this patent? It certainly is not, although this machine constitutes a part of the improvement of which the plaintiff was the original discoverer, and it is for that improvement, and that only, for which the grant is made. If the grant then, is not of this particular machine, can it be sufficient for the plaintiff to prove that he was the original discoverer of it, to entitle him to a recovery? Again, could the plaintiff have obtained a separate patent for the hopperboy, in case he was the original inventor of it, without first swearing or affirming that he was the true inventor of that machine? But has he, or could he have taken such an oath in this case? Most assuredly not; because the prescribed form of the oath is, that he is the inventor of the art, machine, or manufacture for which he solicits a patent. Now, as the patent which he solicited was not for the hopperboy, but for an improvement in the manufacture of flour, he might with safety take that oath, although he knew at the time that he was not the true inventor of the hopperboy; and thus it would happen, that he would indirectly obtain the full benefit of a patent right to this machine, which he could not have directly obtained, without doing what it must be admitted in this case he has not done. But this is not all. If the law has provided for fair and original discoverers a remedy where their rights are invaded by others, it has provided likewise correspondent protection to others, where they have not this merit. Now, let me ask, what judgment the district court could render, if upon a scire facias to repeal this patent, it had appeared, incontestably, that the plaintiff was not the true original discoverer of the hopperboy? Certainly not that which the law has prescribed, viz. for the repeal of the patent, because it would be monstrous to vacate the whole patent for an

invention of which the patentee was the acknowledged inventor, because he was not the inventor of one of the constituent parts of the discovery for which no grant was made. But the court would be compelled, either to do this, or to dismiss the scire facias; and if the latter, then the plaintiff would in effect have the exclusive right to a machine which could not be impeached in the way prescribed by law, although he should himself acknowledge that he was not the true and original inventor of it, and that he knew he was not so at the time he applied for his patent. Still further: suppose this jury should·find that the plaintiff was not the original inventor of this machine, would not the court be prevented from declaring the patent void, under the provisions of the sixth section of the law, for the reasons assigned why the district court could not render that judgment upon a scire facias? Nay, it may well be doubted whether the defence now set up by the defendant can be made at all in this action, inasmuch as the defendant cannot allege in the words of the sixth section, that "the thing secured by patent was not originally discovered by the patentee," because, in point of fact, the thing patented was originally discovered by the patentee, although the hopperboy may not have been. But if this defence cannot be made, does not that circumstance afford a strong argument against this action?

But, it has been asked by the plaintiff's counsel, can it be right that the plaintiff should be deprived of the benefit of his discovery by the mere omission of the defendant to use one or more of the machines which compose the entirety of his discovery? To this question the answer is obvious. If the plaintiff is not the inventor of the parts, he has no right to complain that they are used, if not in a way to infringe his right to their combined use. If he is the original inventor of the different machines constituting the whole discovery, or any of them, he might have obtained a separate patent for those of which he was the original inventor; in which case, the objections stated, would not have been in his way.

Upon the whole, although we give no positive opinion on this point, we think it at least admits of a serious doubt whether this action can be maintained. But if an action will lie upon this patent, against the defendant for having used the hopperboy, still the plaintiff cannot recover, if it has been shown to the satisfaction of the jury, that he was not the original discoverer of that machine. It appears by the testimony of the defendant's witnesses, that Stouffer's hopperboy was in use many years before the alleged discovery of the plaintiff's. That the two machines differ from each other very little in form, in principle, or in effect. They are both worked by the same power which works the mill, and they both stir, mix, cool, dry and conduct the flour to the bolting chest.

Whether the flights and sweepers in the plaintiff's hopperboy are preferable to the cleats used in Stouffer's; or whether, upon the whole, the former is a more perfect agent in the manufactory of flour, than the latter, are questions which the court will not undertake to decide. Because, unless the plaintiff is the original inventor of the hopperboy, he cannot, although he had obtained a separate patent for it, recover in this action however useful the improvements may be which he has made in this machine. If the plaintiff had obtained a patent for his hopperboy, it would have been void, provided the jury should be of opinion, upon the evidence, that his discovery does not extend to the whole machine, but merely to an improvement in the principle of an old one. And if this should be their opinion in the present case, the plaintiff cannot recover.

There remain to be decided, some points of law which were discussed at the bar.

First. It was contended by the plaintiff's counsel, that the defendant having offered to take a license from the plaintiff, if he would have consented to reduce the price of it to forty dollars, he is not now at liberty to deny that the plaintiff is the original inventor of this machine. This argument has no weight in it; not merely because the offer was rejected, and is therefore as if it had not been made, but because the law prevents the plaintiff from recovering, if it appear that he was not the original inventor. If the offer amounted to an acknowledgment that the plaintiff was the original inventor, (and further it could not go) this may be used as evidence of that fact; but it would not entitle the plaintiff to a verdict, if the fact is proved to be otherwise.

Second. The counsel for the plaintiff have strongly insisted that upon the equity of the tenth section of the law, the defence set up in this case, ought not to be allowed after three years from the date of the plaintiff's patent. This argument might, with some propriety perhaps, be addressed to the legislature, but is improperly urged in this place. The law has declared, that, in actions of this kind the defendant may plead the general issue, and give in evidence that the plaintiff was not the original inventor of the machine for which the patent was granted. The legislature has not thought proper to limit this defence in any manner; and shall this court do it? But, what seems to be conclusive upon this point, is, that the argument would tend to defeat altogether the provisions of the sixth section, which authorise this defence to be made. For if it could not be set up after three years from the date of the patent, it would be in the power of a patentee to avoid it altogether, by forbearing to bring suits, until after the expiration of that period. And thus, although the law has carefully provided two modes for vacating a patent improvidently granted, the patentee, though not the origi-

nal inventor, and however surreptitiously he may have obtained his patent, may secure his title to the exclusive use of the invention of another, if he can for three years avoid an enquiry into the validity of that title.

Third. The last point is, that Stouffer's invention was abandoned, and consequently might be appropriated by the plaintiff. The premises may be admitted but not the conclusion. If Stouffer was the original inventor of the hopperboy and chose not to obtain a patent for it, it became public property by his abandonment. He could maintain no action against any person for using it, nor could any other person obtain a patent for it, because he would not be the original inventor. Verdict for defendant.

A writ of error was taken out by the supreme court, and the decision of that court in this case, will be found in 3 Wheat. [16 U. S.] 454.